UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DARRIE WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-01204-SNLJ |
| | ) | |
| TAMMY L. MILLER et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This *pro se* matter comes before the Court on a number of motions to dismiss by the various defendants (#24, #28, #35, #38, #71, #78), a motion to strike by plaintiff that serves as a kind of opposition to the motions to dismiss (#41), several motions for entry of default judgment against defendant Mike Steinmetz (#61, #68. #74, #75), a motion to dismiss for failure to file a proper motion for default judgment by defendant Mike Steinmetz (#70), several requests by plaintiff to amend her complaint (#31, #85), and a myriad of requests for extension of time or for leave on other miscellaneous matters (#2, #32, #67, #87). The Court finds it need not address each motion because, upon review of the record and for the reasons set forth, there is a lack of subject-matter jurisdiction and Article III standing. Therefore, this case will be **DISMISSED without prejudice**.

Plaintiff Darrie Walton has filed both an original and a first amended complaint. Notably, the original complaint lists Darrie Walton as the sole plaintiff who, she purports, "has Power of Attorney to administrate (sic) and file legal actions on behalf of the property owner, Jeana Walton-Day"—her daughter. The first amended complaint adds

1

Walton-Day as a plaintiff, but she apparently had no awareness of this case because, in a request for leave to file a second amended complaint, Walton-Day explains she is "entering this Cause of Action filed by [her] mother … [and] need[s] time to familiarize [herself] with the issues filed thus far, and written in the [first] amended complaint filed by plaintiff Walton[,] my mother[.]"

As best as can be gleaned from the nearly incomprehensible complaints filed by Walton, this case concerns state law breach of contract and misrepresentation claims involving the private sale of a house in Florissant, Missouri, to Walton-Day for the purpose of serving as Walton's (the mother's) retirement home. Apparently, this home, among other things, has some sort of structural damage to it and inoperative appliances that Walton wants remedied. There is also an issue related to shrubs hiding the property line that Walton calls "encroachment." In addition, Walton is upset with the "loan processes and procedures" and argues, among other things, that her agent would not consider other homes—forcing her to accept a home she did not want—and that fraud was somehow involved with the bidding process for the home her daughter ultimately purchased. Finally, Walton invokes the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, while tangentially mentioning both race and disability. It is unclear, however, how the Act applies to the facts of this case, which makes it unlawful to discriminate in the sale or rental of housing. *See* 42 U.S.C. § 3604.

In addition to arguments under Rule 12(b)(6), defendants have raised the issue of this Court's subject-matter jurisdiction. Walton invokes both federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a). Federal question jurisdiction

apparently arises under the Fair Housing Act, which Walton ties to her "disability" (multiple sclerosis) and something about a "bid war" and a "failure to put clients first in the repair of the disclosures of latent property defects." The Court finds defendants' jurisdictional arguments are well-taken.

Federal question jurisdiction permits a federal court to retain a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For example, the Fair Housing Act—a series of federal laws—may permit federal question jurisdiction if it is clear that a claim arises under it. *See, e.g., Estate of Smith v. Metlife Homeloans, N.A.*, 2011 WL 38995 (W.D. Mo. Jan. 5, 2011). Walton premises her claims on Section 3604(f)(2)(A) of the Act, which makes it illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling … because of a handicap of … that person[.]" 42 U.S.C. § 3604(f)(2)(A). But, there are no facts on the face of the complaint that tend to show that Walton's multiple sclerosis had any influence on the "terms, conditions, or privileges of sale" of the home in question. *See Central Iowa Power Co-op v. Midwest Independent Transmission*, 561 F.3d 904, 912 (8th Cir. 2009) ("[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). Indeed, Walton identifies no causal relationship between her so-called disability and the purported "bid war" that took place or defendants' failure to "put her first" in repairing any latent defects. Simply put, there is no facially obvious federal question jurisdiction in this case. *Id.*; *see also Estate of Smith*, 2011 WL 38995 at *1 (declining federal question jurisdiction where the complaint did not state a claim for relief under the Fair Housing Act); *Smith v. Scott*, 2018 WL 4956816

at *2 (W.D. Tenn. Aug. 21, 2018) (accord); *Scotts v. Brooks*, 2008 WL 2025308 at *2 (M.D. Fla. May 9, 2008) (accord).

Diversity jurisdiction, meanwhile, permits a federal court to retain an action arising "where the matter in controversy exceeds the sum or value of $75,000" and is between "citizens of different states," or where foreign citizens or states are involved. 28 U.S.C. § 1332(a). "The party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Loughlin v. U.S.,* 393 F.3d 155, 171 (D.C. Cir. 2004); *see also Barclay Square Properties v. Midwest Federal Sav. and Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir. 1990). In addition, to satisfy the $75,000 threshold, "[t]he general rule is that a court may not aggregate a plaintiff's claims against multiple defendants to reach the amount in controversy unless the defendants are jointly liable." *GreatAmerica Leasing Corp. v. Rohr-Tippe Motors, Inc.,* 387 F.Supp.2d 992, 998 (N.D. Iowa 2005); *see also LM Ins. Corp. v. Spaulding Enterprises, Inc.,* 533 F.3d 542, 548 (7th Cir. 2008) ("[W]hen there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant.").

Here, Walton has failed to identify the citizenship of each defendant. In the original complaint, there was no attempt whatsoever to identify defendants' citizenship; in the first amended complaint, Walton attempts to identify the citizenship of some defendants while refusing to do so for others—of those identified, they share the same

4

state of citizenship as Walton (Missouri), whereas others are simply listed as "unknown." This does not suffice. *See Loughlin*, 393 F.3d at 171. Walton also fails to establish the amount in controversy. Her claims rove between transactions, theories, and defendants, citing varying amounts—sometimes within a range, other times with specific totals (none of which exceed $75,000 independently)—that does not permit the Court to determine whether the amount in controversy is satisfied. Indeed, several defendants express frustrations in their respective motions to dismiss that they simply cannot tell what they are independently being sued for as amongst the various claims and allegations. Given this hodge-podge approach to pleading, and the lack of clarity as to whether joint liability is implicated so as to aggregate claims, it is simply impossible to determine whether the amount in controversy is facially satisfied.

Finally, there is the issue of Article III standing, which this Court is obligated to raise *sua sponte*. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-332 (5th Cir. 2002). "Those who do not possess Article III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. V. Americans United*, 454 U.S. 464, 475-476 (1982). One of the prudential limits on standing provides that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.*; *see also* FED. R. CIV. P. 17(a)(1) (requiring "an action [to] be prosecuted in the name of the real party in interest"). Thus, it has been held, for example, that a daughter lacks standing to assert claims against a holder of a mortgage in her mother's name. *See, e.g., Johnson v. Ocwen Loan Servicing*, 375 Fed.Appx. 868 (11th Cir. 2010).

Walton says she has power of attorney to litigate on Walton-Day's behalf—who actually purchased the home in question—but that is not clear from the record. In any event, because Walton proceeds *pro se*, she may only represent herself even if it could be established that she otherwise has representative capacity over Walton-Day. *See* 28 U.S.C. 1654 ("[P]arties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170-171 (3d Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court."); *see also Whitehurst v. Wal-Mart*, 306 Fed.Appx. 446, 448-449 (11th Cir. 2008) (holding Section 1654 did not permit parents, proceeding pro se, to represent son's interests on fraud and negligence claims). Thus, even if subject-matter jurisdiction could be cured, the lack of standing cannot so long as Walton wishes to proceed *pro se* on her daughter's behalf.

### III. CONCLUSION

For these reasons,

**IT IS HEREBY ORDERED** that this case is **DISMISSED without prejudice** for lack of subject-matter jurisdiction and standing.

So ordered this 18th day of January 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE